**IN the INTEREST OF S.C.F., and L.C.F., Children**

**NO. 01-16-00788-CV**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued March 30, 2017

Rehearing and Rehearing En Banc Overruled June 6, 2017

Vince Ryan, County Attorney, Sandra D. Hachem, Sr. Asst County Attorney, 1019 Congress, 17th Floor, Houston, TX 77002, for Appellee.

Donald M. Crane, 810 South Mason Road, #350, Katy, TX 77450, for Appellant.

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

## OPINION

Jane Bland, Justice

This is an accelerated appeal from the trial court's judgment terminating the parental rights of a father of two children. On appeal, the father contends that the evidence is legally and factually insufficient to support termination of his parental rights. Viewing the evidence in a light favorable to the trial court as the fact finder, we conclude that sufficient evidence supports the termination order. We therefore affirm.

## BACKGROUND

The two children in this case, S.C.F. and L.C.F., were seven- and six-year-old girls, respectively, at the time of the trial. They are the youngest of the mother's five children and the only two fathered by F.C., the father in this appeal.

The children resided with their mother before the Department of Family and Protective Services removed them. The Department removed the two children from their mother's home in February 2014 after receiving a referral reporting neglectful supervision. According to the referral, the children arrived late to school approximately three or four days a week. Upon arrival, the children had not been bathed, smelled bad, and wore dirty clothes. They did not have warm clothing during the winter months and would wear bathrobes over their clothes when it was cold. The children were infested with lice. They had sores on their heads from scratching, and lice would drop onto the floor during class. The children's teeth were so rotten that they would break.

The referral also reported that the mother left the children unattended in the home and in her locked car, that she sexually abused the children, and that she would bring men home and have sex with them in front of the children. The home itself was filthy, and the mother kept a chicken coop inside the apartment where the family lived.

The Department located maternal relatives who were willing to take care of the children, and it referred the mother to its Family-Based Support Services program. No evidence in the record shows that the father had any contact with the children during the year the mother participated in support services and they lived with the mother's relatives.

When it became clear that the mother was not going to satisfactorily complete the services and the relatives caring for the children were no longer able to care for them, the Department brought the children into custody, placed them with a foster family, and initiated this suit.

At a May 2015 status hearing, the caseworker told the trial court that the child advocate had smelled alcohol on the father at an earlier hearing setting. Based on this information, the Department referred the father for a substance abuse assessment. A hair specimen taken from the father during an August 2015 drug screening tested positive for marijuana.

Also in September, the mother, who suffers from schizophrenia, had a mental-health crisis. She voluntarily returned to her childhood home in Mexico for inpatient psychiatric treatment.

The trial commenced in early July 2016. On the first day of trial, the mother's rights were terminated as to all of her children. The father of the other three children voluntarily relinquished his rights, and trial proceeded as to the father of the children in this appeal. The trial court admitted into evidence as Exhibit 22 the Department's family service plan for the father, detailing the reported condition of the children, the mother's mental illness and non-compliance with treatment, and the mother's "significant DFPS history." That document noted the Department's concerns, including: "[The father] left his children in the care of their mother, who is not appropriate;" and "[The father] is not appropriate due to him having a history of domestic violence." The father's service plan goals were to "demonstrate an ability to provide basic necessities such as food, clothing, shelter, medical care, and supervision for his children." The service plan required the father to provide the current caseworker "with any and all sources of income by the 15th of each month" and to complete a psychosocial evaluation and follow all of the recommendations associated with that evaluation. The father signed the family service plan on April 17, 2015.

The caseworker, Jasmin Green, testified that the mother had a prior CPS history in which her mental health and the conditions of the home were in question. The children were placed in a "safety placement" with the mother's brother. When the brother's family could no longer care for the five children, the Department brought them into its care. The mother had not seen the children from late September 2015 to the time of the trial in July 2016.

At the beginning of the trial, Green testified that the Department's goal for the two children was "family reunification" with the father while the Department maintained conservatorship. Green reported that this was the Department's future plan—the father and the children had engaged in one family therapy session at the time of trial. The agency supported the father's reunification with the children with the Department's conservatorship, but Green testified that "we would really want to rebuild that relationship because [the father] really didn't reside with the children." Green stated that the Department would come back to the trial court to seek modification at a later time based on the family therapist's later recommendation. Green testified that the father had completed all of his services, with the exception of family therapy, and that he had visited and bonded with his children.

Green testified that the children "were behind" when they first came into the Department's care, but that their circumstances had "substantially improved" since the Department was charged with their care. She stated that the five children would prefer to be together, but that the father had expressed some desire for all of the children and the oldest of the five had told Green that she "would be okay" with going with the father.

Carla Ramirez, the child advocate, testified that the Department had initially sought termination of the father's rights, but had changed its position in the three weeks before trial. Ramirez stated that, if the trial court ordered Department conservatorship and a continuance of the trial, then Child Advocates would monitor the situation and talk to the family therapist about the children's best interests. She noted that the father had just started therapy and completed services during the month before trial and "he hadn't" done

anything by the time of a June 17th hearing that took place before the July 5th beginning of the trial. When Ramirez had asked the father about his reason for the delay in accepting services and having "the same degree of responsibility as any other father over, you know, a year period," the father answered that "he did not want to take the parental rights from the mom." The father told her that "now since the CPS has told him that we're not giving the children back to Mom, now he wants to try . . . to get them back."

Ramirez agreed that the children were doing well in their current placement, which was not a long-term placement. Meanwhile, the Department was continuing to look for a long-term placement with a family relative.

In light of this testimony, the trial court continued the trial. The trial recommenced on July 12. The father did not appear at the trial. At that time, the Department stated that its continued goal was reunification with the father. Ramirez again testified. She had visited with the children again during the trial recess and had informed them that the Department had changed its goal to reunification with the father. Ramirez stated that the children then informed her that they "are very adamant" against going home with the father. The older child's earlier expression to the caseworker that she would be "okay" with the children going to their father was made at the time because the father had promised her a phone and a lap top. The children's therapist similarly reported that the children do not want to go with the father. The children told Ramirez that "the reason they don't want to go back home, [is] because he toma mucho, which means he drinks too much and they've seen him roll around the floor fighting with Mom." The children reported that dad "smelt like alcohol" during supervised visits in the CPS office. Ramirez then interviewed the father during the recess and talked to him about the children stating that "they've seen him drink, that they['ve] seen him fighting." The father told Ramirez that "he's never fought" and he "doesn't drink because he is allergic." The father reported to Ramirez that "if he drinks beers he will die." Ramirez confirmed, however, that the father had a protective order in place against contact with the mother in 2013. In light of reviewing "the case," "the substance abuse assessment," and the interviews with the children and the family therapist, Ramirez testified that Child Advocates continued to recommend termination of the father's parental rights.

Green also was recalled to the witness stand. She testified that the father had completed his services except for family therapy. She stated that family therapy was added to the service plan when the Department changed its goal, and the father had completed two sessions at this time. Green testified that the father told her "the father had never really lived with [his two daughters], [but] he provided financial support." Other than what the father reported, the caseworker had no evidence that the father provided support for the children, and the record shows no employment or wage information provided to the Department in compliance with the service plan. The trial court abruptly adjourned the trial and asked that the Department find a person with additional knowledge of the case to appear when the case recommenced.

On August 11, the father's counsel moved for a two-week continuance of the trial. Counsel sought the continuance because an interim July drug test administered to the father yielded a positive result for the presence of cocaine. In light of this drug-test result, counsel reported that the Department had returned to its initial po-

sition recommending termination of the father's parental rights. The trial court granted the father's motion for continuance, and trial was continued until August 25th.

On August 25th, the Department proffered the results of two positive drug tests, and the trial court admitted them into evidence without objection. The first, dated August 21, 2015, reported that the father's hair specimen tested positive for marijuana and marijuana metabolite. The second, dated July 20, 2016, reported that the father's hair specimen was positive for cocaine and cocaine metabolites.

The father then testified. When confronted with the drug test results, the father testified that he had "[n]ever ha[d] drugs in my life." He described the July test as a "false test." He testified that he had completed the service plan except for family therapy. He did not testify about his means of supporting the children, his living situation, or his parenting abilities. He did not offer an explanation for his decision to leave them in their mother's neglectful care. He did not dispute the caseworker's assessment that he had never really lived with the children. He stated that he had seen the children for an hour for lunch after each of the family therapy sessions, but that otherwise "CPS don't call me to see my daughters," and thus it had been three months since he otherwise had seen them. He testified that it was in the best interests of the children to live with him.

Ramirez testified for a third time. She testified that the children are "doing well" with no medical or physical problems. One child might be a candidate for speech therapy. She continued to recommend that the father's rights be terminated because of the children's expressed desires, the father's positive tests for alcohol and cocaine, his denials in his substance abuse

assessment that he had any drug or alcohol issues, and the open protective order against him by the mother. Ramirez reported that the protective order resulted from the father's "dragging the mother on the floor, physically fighting her and this is what the children [had] seen." She also noted that the father excused the earlier positive drug test for marijuana by stating that it was due to exposure because "the landlord used to come over and smoke in his house," but the father reported that he would "use his landlord as a possible child caregiver." She observed that the father was untruthful to the Department about his alcohol and drug use and his domestic issues. She opined that he lacked skills necessary to parent the children, particularly given the fact that he went through the family service plan and then tested positive for cocaine after the termination trial began.

Ramirez conceded that the children's current placement was not an adoptive placement, but she noted that their caregiver had agreed to keep them "however long until they're adopted." The placement is "very safe" and "drug free." Ramirez opined that termination was in the best interests of the two children.

The trial court signed the final decree terminating the father's parental rights to the children on September 15, 2016.

## DISCUSSION

### I. Standard of Review

▇ A parent's right to the care, custody, and control of his child is a liberty interest protected under the Constitution, and we strictly scrutinize termination proceedings on appeal. *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Clear and convincing evidence must support an invol-

untary termination. *Holick*, 685 S.W.2d at 20 (citing *Santosky*, 455 U.S. at 747–48, 102 S.Ct. at 1391–92). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014).

In conducting a legal-sufficiency review in an appeal from a termination case, the appellate court looks at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, disregarding all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a legal sufficiency review of the record, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

In conducting a factual-sufficiency review in a parental-rights-termination case, we determine whether, considering the entire record, including evidence both supporting and contradicting the finding, a factfinder reasonably could have formed a firm conviction or belief about the truth of the matter on which the Department bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We should consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266–67. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* at 266.

To prevail in a termination case, the Department must establish that one or more of the acts or omissions enumerated under Texas Family Code section 161.001(1) occurred and that the termination is in the best interest of the children, pursuant to section 161.001(2). Tex. Fam. Code Ann. § 161.001. In this case, the father challenges the trial court's findings that he endangered the children and that he failed to comply with the court-ordered family service plan. *See id.* § 161.001(1)(E), (O). He also challenges the trial court's finding that termination is in the best interest of the children. *See id.* § 161.001(2).

## II. Sufficiency of the Evidence Supporting Termination

Section 161.001(1)(E) of the Family Code provides a basis for terminating parental rights because of child endangerment. " 'To endanger' means to expose a child to loss or injury or to jeopardize a child's emotional or physical health." *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *accord In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) (citing *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam)). Under subsection 161.001(1)(E), a parent's rights can be terminated when she has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(1)(E).

Endangerment means more than "a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment," but "it is not necessary that the

conduct be directed at the child or that the child actually suffers injury." *In re T.N.*, 180 S.W.3d at 383 (citing *In re M.C.*, 917 S.W.2d at 269); *see Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see also In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (holding that endangering conduct is not limited to actions directed toward child); *Jordan*, 325 S.W.3d at 723 (holding that danger to child need not be established as independent proposition and may be inferred from parental misconduct even if conduct is not directed at child and child suffers no actual injury); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 616–17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (explaining that conduct occurring either before or after child's removal from home may be relevant). The parent's conduct must cause the endangerment as a result of a voluntary, deliberate, and conscious course of conduct. *Jordan*, 325 S.W.3d at 723; *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).

 Domestic violence may be considered as evidence of endangerment. *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied) (citing *In re B.J.B.*, 546 S.W.2d 674, 677 (Tex. Civ. App.—Texarkana 1977, writ ref'd n.r.e.)); *In re S.R.*, 452 S.W.3d 351, 361 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). Violent conduct by a parent toward the other parent may produce an environment that endangers the physical or emotional well-being of a child. *In re J.T.G.*, 121 S.W.3d at 125; *In re J.I.T.P.*, 99 S.W.3d at 845.

 The father endangered the children by physically abusing the mother in the children's presence. Ramirez testified that there was an open protective order against him due to his violent conduct with the mother. The father did not controvert this testimony when he testified. The father had left the children in the filthy home with their mother. The mother was a caregiver who was incapable of caring for the children, suffered from untreated mental illness, and was neglectful of children's physical and medical needs. The father did not deny these assertions from the caseworker.

In addition, the random drug-testing results support a finding that the father consumed marijuana and cocaine during the time the children were in Department custody, knowing that his parental rights were at risk.[1] Because a parent's illegal drug use exposes the child to the possibility that the parent may be impaired or imprisoned, it supports a finding that the parent engaged in a course of conduct that endangered the children's physical or emotional well-being. *In re A.M.*, 495 S.W.3d 573, 579 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *see In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (explaining that parent's use of narcotics and effect on ability to parent may qualify as endangering course of conduct). In the face of contrary evidence, the trial court was entitled to disbelieve F.C.'s denials of illegal drug use. *See In re J.O.A.*, 283 S.W.3d at 346 (recognizing that factfinder, not appellate court, is sole arbiter of witness's credibility and demeanor).

Viewing all the evidence in the light most favorable to the trial court's judg-

---

1. After the father's positive drug test for cocaine, both Ramirez and the children's guardian ad litem disputed the caseworker's testimony that the father had successfully completed his family service plan. Ramirez opined that the test result showed that the father was untruthful during the substance abuse assessment, and the ad litem testified that the positive test showed that the father "didn't learn anything" from the services.

ment, we conclude that there was some evidence of endangerment on which a reasonable factfinder could have formed a firm belief or conviction of endangerment. *See* TEX. FAM. CODE ANN. § 161.001(1)(E); *In re J.O.A.*, 283 S.W.3d at 346.

Having determined that the evidence is legally and factually sufficient to support the trial court's finding on this statutory ground, we need not consider whether the evidence would support subsection (O), the other predicate ground for termination found by the trial court. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (affirming termination decree based on one predicate without reaching second predicate found by factfinder and challenged by parent).

### III. Sufficiency of the Evidence of the Children's Best Interest

■ In addition to a predicate violation, the Department must establish by clear and convincing evidence that termination is in the best interests of the children. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2015). There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re J.F.C.*, 96 S.W.3d 256, 294 (Tex. 2002); *see* TEX. FAM. CODE ANN. § 153.131(b) (West 2014).

■ Because of the strong presumption that maintaining the parent-child relationship is in the best interest of the child, and the due-process implications of terminating a parent's rights, the evidence be clear and convincing evidence that termination is in the child's best interest. *Id.* "Termination should not be used to merely reallocate children to better and more prosperous parents." *In re W.C.*, 98 S.W.3d 753, 758 (Tex. App.—Fort Worth 2003, no pet.); *see In re E.N.C.*, 384 S.W.3d 796, 809 (Tex. 2012).

■ The factfinder should consider a number of factors to determine the best interest of the child, including

- the desires of the child,
- the present and future physical and emotional needs of the child;
- the present and future emotional and physical danger to the child,
- the parental abilities of the people seeking custody,
- programs available to assist those people in promoting the best interest of the child,
- plans for the child by those people or by the agency seeking custody,
- the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate, and
- any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Evidence establishing one of the predicate acts under section 161.001(b)(1) also may be relevant to determining the best interests of the child. *In re A.M.*, 495 S.W.3d at 581. In some cases, undisputed evidence of only one factor may be sufficient to support a finding that termination is in the best interest of the child; in other cases, there could be "more complex facts in which paltry evidence relevant to each consideration mentioned in *Holley* would not suffice" to support termination. *In re C.H.*, 89 S.W.3d at 27.

The father had "never really lived with" his daughters before they came into Department custody. Ramirez testified that the father had an open protective order against contact with the mother since 2013, and there is no evidence in the record that he had contact with the children after the protective order was instituted until they came into Department custody. Even after

the Department took the children into custody, the father did not complete any services from April 2015 through June of 2016. He began services three weeks before trial began, when he realized that the Department would not return the children to the mother.

The children were "adamant" that they preferred not to live with their father. The older child initially told the caseworker that she would be okay with going to live with the father. Later, however, she recanted, telling Ramirez that she did not want to live with the father, and had said so at first because the father promised to give her a cell phone and a laptop. The younger child did not waver in expressing that she did not wish to live with the father. Ramirez testified that the children remember their father drinking alcohol and physically fighting with their mother. The therapist confirmed that the children did not desire to be with the father. The children reported that the father smelt of alcohol during his supervised visits. The record contains testimony that the children and others involved in the case observed signs that the father had consumed alcohol at inappropriate times.

The children are in a foster placement together with their three half-siblings. The home is safe and drug-free, and the children attend school and have their support and medical needs met by the Department. While it is true that the current placement is not an adoptive placement, the Department plans to make the children available for non-relative adoption in a safe, permanent home.

The trial court could reasonably have found that the father failed to show that he is able to provide appropriate care for the children with any consistency or that home life with him would be safe or stable. While the caseworker described the father as "bonded" with the children, other evidence in the record could lead a reasonable fact finder to the contrary conclusion. The father left the children with a neglectful mother and called on the Department to take custody of his children rather than caring for them himself. He visited the children only when the Department scheduled visits and had no explanation for his apparent lack of effort to visit the children for the first year that they were in Department custody. He proffered no basis for his decisions to leave the children in an unsafe environment with their mother or not to see them while in Department custody, other than that the caseworkers did not call him to see the children. *See Holley*, 544 S.W.2d at 371 (citing *Heard v. Bauman*, 443 S.W.2d 715, 718 (Tex. 1969)) (observing that excuse for parent's acts or omissions can be considered by trial court as factor in making best-interest determination). The only evidence of his engagement with the children before they entered custody of the Department is the children's description of the father rolling around fighting with the mother on the floor and drinking too much. The caseworker testified that the children's circumstances "substantially improved" when they came into Department care, and that they are "doing well" in their current placement.

The father proffered no basis for his lack of engagement in family services with his children from April 2015 until June 2016, three weeks before trial, when he learned that the mother's rights would be terminated.

The father used cocaine during the additional time he was given to complete the service plan while the trial was continued. At trial, Ramirez opined that termination was in the best interests of the children, not only because of the father's positive drug test, but also because of his lack of veracity concerning his illegal drug use

and his history of domestic violence, all of which he categorically denied without explanation. She found the father's untruthfulness troubling not only in those areas but with respect to his fitness to parent. In addition, the children were "adamant" that they did not want to live with their father and preferred their current placement. While the father denied consuming alcohol during visits with the children and using marijuana and cocaine, the trial court have credited Ramirez's testimony and the lab reports over the father's denials and claim of a "false test."

The evidence of the father's drug use and his history of domestic violence supports a finding that that placement with the father would put the children in emotional danger. *See Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (illegal drug use while parental rights were in jeopardy may be considered endangering course of conduct critical to finding that termination is in child's best interest).

Considering the entire record, clear and convincing evidence supports the trial court's implied findings that the children had no desire to live with their father, that he used drugs knowing that his parental rights were at risk of being terminated, that he left the children with a caregiver who was neglectful and incapable of caring for them, and that he had a history of domestic violence related to drinking too much. The Department began the trial planning to seek conservatorship with eventual placement with the father; however, it returned to its goal of termination once the father tested positive for cocaine use mid-trial. The father denied Ramirez's testimony regarding drug use and domes-

tic violence, but the trial court could have disbelieved those denials and believed Ramirez and the lab reports introduced into evidence. The father did not deny Ramirez's testimony that the children had no desire to live with him. Finally, while the Department proffered evidence that the children's circumstances had substantially improved in their current placement and they were doing well, the father did not controvert that evidence or provide the trial court with evidence of his ability to care for children who had never lived with him, nor did he testify that he had ever provided for their social or emotional well-being during the time they lived with their mother or were in the custody of the Department. We hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of the father's parental rights was in the children's best interest.

## CONCLUSION

We affirm the judgment of the trial court.

Jennings, J., dissenting.

Terry Jennings, Justice, dissenting.

It is cardinal . . . that the custody, care and nurture of the child reside first in the parents . . . .[1]

In this accelerated appeal,[2] appellant, F.C., challenges the trial court's order, entered after a bench trial, terminating his parental rights to his two minor children, S.C.F. and L.C.F (collectively, "the children"). In three issues, F.C. contends that the evidence is legally and factually insufficient to support the trial court's findings that he engaged, or knowingly placed the children with persons who engaged, in conduct that endangered their physical and

---

**1.** *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944).

**2.** *See* Tex. Fam. Code Ann. § 263.405(a) (Vernon 2014); Tex. R. App. P. 28.4.

emotional well-being [3]; he failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children [4]; and termination of his parental rights is in the best interest of the children.[5] Because the majority errs in holding that the evidence is legally and factually sufficient to support the trial court's finding that termination of F.C.'s parental rights is in the best interest of the children, I respectfully dissent.[6]

## Background

On February 27, 2015, the Texas Department of Family and Protective Services ("DFPS") filed a petition seeking managing conservatorship and termination of F.C.'s parental rights to the children.[7]

At trial, DFPS caseworker Jasmin Green testified that DFPS took the children into custody due to allegations related to their mother. Green explained that DFPS gave F.C. a Family Service Plan ("FSP") and F.C. completed all of the requirements of his FSP, with the exception of the family-therapy requirement. Green, however, noted that "family therapy wasn't initially listed on" F.C.'s FSP and he and the children were currently attending family therapy. Green explained that the recommendation for F.C. to attend family

therapy occurred after he completed individual therapy and at a time when DFPS was considering reunification of the children with F.C. At the time of trial, F.C. and the children had attended two family-therapy sessions.

Green further noted that F.C. attends visits with his children and those visits are "going well." F.C. is bonded with the children, and although he did not live with the children before their removal from their mother's care, he did provide financial support for them and their mother. Green also noted that one of the children's older half-siblings had indicated to her that if the children were to be returned to F.C., "they would be okay with that."

Carla Ramirez, an advocacy coordinator with Child Advocates Inc. ("Child Advocates"), testified that F.C. has expressed a desire to care for the children, but she presented conflicting testimony on whether or not the children wanted to live with their father. She noted that the children are doing well in their current placement, do not have any medical problems, and are attending school. Further, although she stated that it would be in the children's best interest to be in a stable home, she also stated that the children's current placement is not "a long term placement"

---

**3.** *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (Vernon Supp. 2016).

**4.** *See id.* § 161.001(b)(1)(O).

**5.** *See id.* § 161.001(b)(2).

**6.** The majority also errs in holding that the evidence is legally and factually sufficient to support the trial court's finding that F.C. engaged, or knowingly placed the children with persons who engaged, in conduct that endangered their physical and emotional well-being. *See id.* § 161.001(b)(1)(E). However, the evidence is legally and factually sufficient to support the trial court's finding that F.C. failed to comply with the provisions of a court order that specifically established the actions

necessary for him to obtain the return of the children. *See id.* § 161.001(b)(1)(O); *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination...."); *Walker v. Tex. Dep't of Family & Protective Servs.,* 312 S.W.3d 608, 618 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Thus, I address only the lack of evidence supporting the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

**7.** At the time of trial, S.C.F. was seven years old and L.C.F. was six years old.

and she would like to find them another placement.

Ramirez further testified that the children told her that F.C. "toma mucho, which means he drinks too much and they've seen him roll around on the floor fighting with [their mother]." And L.C.F. told her therapist that F.C. "smelt like alcohol" during "certain visits" that he had with the children. However, when Ramirez spoke to F.C. about this, he told her that he had "never fought and he doesn't drink because he's allergic." F.C. also told Ramirez that "he has never drinked in his life and never had any legal issues."

Ramirez also explained that F.C. "did have a protective order against him in 2013 from [the children's mother]," although the trial court admitted into evidence little detail concerning the circumstances surrounding the protective order.[8] Ramirez noted that F.C. tested positive for alcohol use in September 2015 and cocaine use in July 2016. The children, however, had never seen F.C. use narcotics.

F.C. testified that he has "[n]ever [done] drugs in [his] life" and any positive narcotics-test results were false. He noted that he had "done everything" required by his FSP and is currently attending family

therapy with the children.[9] F.C. last saw the children the day before trial during a family-therapy session. He visits with them every two weeks, and after their therapy sessions, he takes the children to eat lunch. He opined that it is in the children's best interest to be returned to his care.[10]

## Standard of Review

A parent's right to "the companionship, care, custody, and management of" his children is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982) (internal quotations omitted). The United States Supreme Court has emphasized that "the interest of parents in the care, custody, and control of their children ... is perhaps the oldest of the fundamental liberty interests recognized by th[e] Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). Likewise, the Texas Supreme Court has concluded that "[t]his natural parental right" is "essential," "a basic civil right of man," and "far more precious than property rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (internal quota-

8. Although the majority implies that the protective order against F.C. remains in place, the record does not support the implication.

9. Although the majority asserts that "the record shows [that F.C. provided] no employment or wage information ... to [DFPS] in compliance with" his FSP, it is undisputed that F.C. completed his FSP, with the exception of the family-therapy requirement, and his FSP required him to provide DFPS with "[p]roof of income" and a list of "any and all sources of income for himself ... each month."

10. The majority focuses on testimony that F.C. did not provide, noting he "did not testify about his means of supporting the children, his living situation, ... his parenting abilities," or "his decision to leave [the children]

in their mother's neglectful care." *See In re E.N.C.*, 384 S.W.3d 796, 808 (Tex. 2012) ("A lack of evidence does not constitute clear and convincing evidence."). However, F.C. did not have the burden to prove that his parental rights *should not* be terminated. Rather, DFPS had the burden to prove by clear and convincing evidence that F.C.'s parental rights *should* be terminated. *See* TEX. FAM. CODE ANN. § 161.001(b); *see also In re K.A.S.*, 399 S.W.3d 259, 263 (Tex. App.—San Antonio 2012, no pet.) ("To terminate parental rights pursuant to section 161.001 of the Family Code, *the Department has the burden to prove* one of the predicate grounds in subsection [ (b) ](1) and that termination is in the best interest of the child." (emphasis added)).

tions omitted). Consequently, "[w]e strictly construe involuntary termination statutes in favor of the parent." *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012).

Because termination of parental rights is "complete, final, irrevocable and divests for all time that natural right ..., the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." *Holick*, 685 S.W.2d at 20. Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (Vernon 2014); *see also In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). Because the standard of proof is "clear and convincing evidence," the Texas Supreme Court has held that the traditional legal and factual standards of review are inadequate. *In re J.F.C.*, 96 S.W.3d at 264–68.

Instead of requiring just more than a scintilla of evidence to support a finding, we, in conducting a legal-sufficiency review in a termination-of-parental-rights case, must determine whether the evidence, viewed in the light most favorable to the finding, is such that the fact finder could reasonably have formed a firm belief or conviction about the truth of the matter on which DFPS bore the burden of proof. *Id.* In viewing the evidence in the light most favorable to the finding, we "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (internal quotations omitted). However, this does not mean that we must disregard all evidence that does not support the finding. *In re J.F.C.*, 96 S.W.3d at 266. Because of the heightened standard, we must also be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.* If we determine that no reasonable trier of fact could form a firm belief or conviction that the matter that must be proven is true, we must hold the evidence to be legally insufficient and render judgment in favor of the parent. *Id.*

Notably, a fact finder may not, from meager circumstantial evidence, reasonably infer an ultimate fact, one no more probable than another. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997). This Court has explained that under the law of evidence, the term "inference" means,

> [A] truth or proposition drawn from another which is supposed or admitted to be true. A process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved....

*Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 400 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.) (quoting *Inference*, Black's Law Dictionary (5th ed. 1979)). Thus, to "infer a fact," one "must be able to deduce that fact as a logical consequence from other proven facts." *Id.* In other words, there must be a logical and rational connection between the facts in evidence and the fact to be inferred. *United States v. Michelena-Orovio*, 702 F.2d 496, 504 (5th Cir. 1983), *aff'd on reh'g*, 719 F.2d 738 (5th Cir. 1983) (en banc). It is important to be mindful that "[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (alteration in original) (internal quotations omitted). And in regard to the suf-

ficiency of evidence in circumstantial-evidence cases, one inference cannot be based upon another inference to reach a conclusion. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003). Conclusions based on such stacking do not constitute evidence. *Id.*

In conducting a factual-sufficiency review in a parental-rights-termination case, we must determine whether, considering the entire record, including evidence both supporting and contradicting the finding, a fact finder reasonably could have formed a firm conviction or belief about the truth of the matter on which DFPS bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). The higher burden of proof in parental-rights-termination cases alters the appellate standard of review: "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *Id.* at 25–26. In considering whether disputed evidence rises to the level of being clear and convincing, we must consider whether the evidence is sufficient to reasonably form in the mind of the fact finder a firm belief or conviction as to the truth of the allegation sought to be established. *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 250 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We should consider whether the disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266–67. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (internal quotations omitted).

## Best Interest

In his third issue, F.C. argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in the best interest of the children because he had "completed" the requirements of his FSP, except for the family-therapy requirement, his visits with the children were going "very well," the children had "bonded with him," and "[t]hroughout the trial, [DFPS] supported [him] and did not believe termination [of his parental rights is] in the best interest of his children."

As the majority correctly emphasizes, a strong presumption exists that the children's best interest is served by maintaining the parent-child relationship. *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). In determining whether the termination of F.C.'s parental rights is in the best interest of his children, we may consider several factors, including: (1) the children's desires; (2) the current and future emotional and physical needs of the children; (3) the current and future emotional and physical danger to the children; (4) the parental abilities of the parties seeking custody; (5) whether programs are available to assist those parties; (6) the plans for the children by the parties seeking custody; (7) the stability of the proposed placement; (8) the parent's acts or omissions that may indicate that the parent-child relationship is not proper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re L.M.*, 104 S.W.3d at 647. The *Holley* factors are not exhaustive, and there is no requirement that DFPS prove all factors as a condition precedent to the termination of parental rights. *See In re C.H.*, 89 S.W.3d at 27.

The majority relies on a few pieces of evidence to reach its holding that the evidence is legally and factually sufficient to support the trial court's best-interest finding. Specifically, the majority states: (1) F.C. had "'never really lived with' [the children] before they came into [DFPS] custody"; (2) F.C. delayed in beginning to meet the requirements of his FSP; (3) "[t]he children were 'adamant' that they preferred not to live with" F.C.; (4) "the children remember [F.C.] drinking alcohol and physically fighting with their mother"; (5) "[t]he children are in a foster placement together with their three half-siblings"; (4) the children's placement is "safe and drug-free," they attend school, and DFPS supports their medical needs; (5) F.C. "proffered no basis for his decision[ ] to leave the children in an unsafe environment" with their mother; and (6) F.C. has used narcotics and has a "history of domestic violence." Respectfully, the majority mischaracterizes the evidence.

In regard to the children's desires, the evidence is contradictory at best. Notably, neither child testified at trial. Ramirez, an advocacy coordinator with Child Advocates, did testify that the children did "[n]ot want to go" with F.C., but she also stated in the same breath that S.C.F. "want[ed] to go home [with F.C.] because he promised her a phone and a lap top." S.C.F.'s desires cannot be reasonably discredited simply because she, as a seven year old, was excited about obtaining a telephone and a computer. In regard to L.C.F., Ramirez only testified, without explanation or description, that she "just kept going like this to me." This statement provides no insight into L.C.F.'s desires. See In re E.N.C., 384 S.W.3d at 808 ("A lack of evidence does not constitute clear and convincing evidence.").

Further, DFPS caseworker Green testified that the children are bonded with F.C. and their visits, which occur every two weeks, are "going well." See In re Z.B., No. 07-16-00026-CV, 2016 WL 3922936, at *7 (Tex. App.—Amarillo July 12, 2016, no pet.) (mem. op.) (trial court's best-interest finding not supported by clear and convincing evidence where "children enjoyed their visits" with father); In re M.W.H., No. 13-12-00187-CV, 2012 WL 6808510, at *8 (Tex. App.—Corpus Christi Nov. 29, 2012, pet. denied) (mem. op.) (noting children happy when they spend time with their parents); In re W.C., 98 S.W.3d 753, 766 (Tex. App.—Fort Worth 2003, no pet.) (mother and children bonded, mother visited children frequently, and obviously cared for them). And one of the children's older half-siblings indicated to Green that if the children were to be returned to F.C., "they would be okay with that." The record evidence of the children's desires is anything but clear and convincing.

In regard to the children's current and future emotional and physical needs, there is little to no evidence in the record. See In re E.N.C., 384 S.W.3d at 808 ("A lack of evidence does not constitute clear and convincing evidence."). Ramirez's testimony indicated that at one time the children were seeing a therapist; however, the frequency and extent of their participation in therapy is not addressed in the record. Nor is it apparent whether or not the children are currently attending therapy outside of the family-therapy sessions that they attend with F.C. And there is no evidence that F.C. would be unwilling to comply with any continuing-therapy needs of the children or that he, in the past, had failed to meet the children's emotional or physical needs. See id. (no evidence children's needs would go unmet if they were returned to father); In re J.K.V., 490 S.W.3d 250, 257–58 (Tex. App.—Texarkana 2016, no pet.) (DFPS "did not present any evidence suggesting that [the child]'s needs would go unmet if he lived with [his

father]"); *In re W.C.*, 98 S.W.3d at 758 (no evidence presented regarding mother's failure to meet children's physical needs in past). Further, the record reveals that the children have no medical problems, and F.C. is actively engaged in attending family therapy with the children. *See In re E.N.C.*, 384 S.W.3d at 808 (second *Holley* factor did not weigh in favor of termination where evidence did not show how children's needs differed from needs of any other children); *In re J.K.V.*, 490 S.W.3d at 257–58 (same).

In regard to the current and future emotional and physical danger to the children, the majority states that "[t]he evidence of [F.C.]'s drug use and his history of domestic violence supports a finding that th[e] placement with [him] would put the children in emotional danger." Notably, F.C. tested positive for cocaine use only once during the entire pendency of the case.[11] *Cf. In re J.N.*, 301 S.W.3d 429, 434–35 (Tex. App.—Amarillo 2009, pet. denied) (finding evidence insufficient to support trial court's finding termination of parental rights in best interest of child, despite parent testing positive for narcotics on two separate occasions). While any narcotics use by a parent is certainly not desirable, there is no evidence that F.C. was addicted to narcotics, had a history of narcotics use, or was ever convicted of a criminal offense related to the possession of or use of narcotics.[12] *Cf. In re G.N.*, 510 S.W.3d 134, 135, 138–40 (Tex. App.—El Paso 2016, no pet.) (father had "history of substance abuse, including use of cocaine, marijuana, and opiates" and "a substantial criminal history which include[d] ... four cases involving possession of drugs"; father did not address his "substance abuse issues"

and "refused to be tested for drugs after a pipe containing cocaine was found in his vehicle"); *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("There is strong evidence in this case that the mother regularly used illegal drugs both during her pregnancy with the child and after undergoing a treatment program. ... The mother admitted she had used drugs during her pregnancy even though she knew it might harm the child. She tested positive for drugs a month after the child was removed. And she used drugs even though that violated the conditions of her probation, resulting in her going to jail, away from the child."). Further, Ramirez testified that the children had never seen F.C. use narcotics, and F.C. testified that he had "[n]ever [done] drugs in [his] life." F.C.'s FSP also did not require him to participate in narcotics testing or treatment for narcotics use, nor did it indicate that narcotics use by F.C. was a concern of DFPS.

The majority also emphasizes that F.C.'s "history of domestic violence" indicates that the children will be placed in "danger." However, again, there is little evidence in the record regarding the purported "domestic violence" that occurred at the hands of F.C. Ramirez testified that the children told her that they had seen F.C. "roll around the floor fighting" with their mother, and Ramirez stated that F.C. "ha[d] a protective order against him in 2013 from [the children's mother]." However, there is no evidence concerning the frequency or extent of the fighting between F.C. and the children's mother, there is little detail concerning the circumstances surrounding the protective order, and there are no allegations that F.C. ever

---

11. The majority notes that F.C. "tested positive for marijuana" in August 2015. However, Ramirez testified that F.C. tested positive for "exposure" to marijuana.

12. In fact, there is no evidence in the record that F.C. has ever been convicted of any crime.

violated the protective order or that the order is still in place. Nor is there evidence that F.C. has displayed violent tendencies, is aggressive, has anger issues, or that he has ever harmed a child. *See In re J.N.*, 301 S.W.3d at 433–35 (evidence insufficient to support the trial court's best-interest finding where, although parent had history of being in abusive relationships, no evidence he physically abused child); *cf. In re G.N.*, 510 S.W.3d at 135, 138–40 (evidence sufficient to support trial court's best-interest finding where father "violated protective orders," became aggressive and angry when he did not take medication, and had criminal history, "which include[d] four assault charges, three of which involved injury to a family member").

Further, while a trial court may measure a parent's future conduct based upon his conduct in the past, it is significant that DFPS has not presented any evidence of recent "domestic violence" issues that have plagued F.C. It is undisputed that F.C. has completed his FSP, with the exception of the family-therapy requirement, which required him to "create and maintain" a *safe* home for the children. And it is also significant to note that although F.C. may have engaged in a physical altercation with the children's mother in the past, F.C. and the children's mother are no longer in a relationship together, the children's mother suffers from schizophrenia, she is in Mexico receiving inpatient treatment at a mental hospital, and her parental rights to the children have been terminated. *See In re J.K.V.*, 490 S.W.3d at 258 (despite father's admission of physical altercation with mother in past, finding evidence insufficient to support trial court's best-interest

finding where parent's relationship had ended).

To the extent that the majority relies on the limited evidence of F.C.'s alcohol consumption to support the trial court's best-interest finding, it should be noted that the children only reported to Ramirez that, in their words, F.C. "toma mucho" and that he "smelt like alcohol" at "certain visits" with them. However, there is no evidence that F.C. was ever intoxicated around the children or has a history of alcohol abuse.[13] *See Laura T. v. Tex. Dep't of Protective & Reg. Servs.*, No. 05-98-00160-CV, 1999 WL 1095787, at *11 (Tex. App.—Dallas Dec. 6, 1999, pet. denied) (not designated for publication) (finding mother did not endanger child where no evidence her fiancé posed danger to child because of his drinking or was ever intoxicated around child); *cf. In re D.V.*, 480 S.W.3d 591, 603–04 (Tex. App.—El Paso 2015, no pet.) (clear and convincing evidence supported trial court's best-interest finding where evidence clearly revealed mother's priorities as "drugs, alcohol, and an unstable and abusive environment"); *In re I.G.*, 383 S.W.3d 763, 770, 773–74 (Tex. App.—Amarillo 2012, no pet.) (termination of parental rights in best interest of child where father "ticketed or arrested on at least ten occasions for public intoxication" and had history of alcohol abuse). Nor did Green or Ramirez testify that the children should not be returned to F.C. because of his purported alcohol use. *See In re J.A.S., Jr.*, No. 13-12-00612-CV, 2013 WL 782692, at *4 (Tex. App.—Corpus Christi Feb. 28, 2013, pet. denied) (mem. op.) (counselor testified "no concerns about drugs or alcohol"). And F.C. specifically denied drinking when Ramirez raised her concern about his alcohol consumption.

13. The majority refers to F.C.'s "positive tests for alcohol" as one of the justifications for the termination of his parental rights. However, Ramirez testified that F.C. only tested positive for alcohol *once* in September 2015, and the alcohol/narcotics-test results that were admitted into evidence at trial do not show that F.C. ever tested positive for alcohol use. And nothing in F.C.'s FSP shows that he was prohibited from consuming alcohol.

In regard to F.C.'s parental abilities, F.C. has completed his FSP, with the exception of the family-therapy requirement, attended parenting classes, and participated in individual therapy.[14] And at the time of trial, F.C. was actively engaged in family therapy with the children. In short, F.C. has availed himself of the services provided by DFPS and has "done everything" required of him. *See In re J.A.S., Jr.*, 2013 WL 782692, at *9 (fourth *Holley* factor did not weigh in favor of termination where mother "availed herself of service provided by [DFPS], ... set goals, and ... bec[a]me motivated to accomplish those goals").

In regard to the programs available to assist F.C., DFPS presented no evidence that F.C. would require assistance if the children were returned to him. *In re E.N.C.*, 384 S.W.3d at 808 ("A lack of evidence does not constitute clear and convincing evidence."); *In re J.K.V.*, 490 S.W.3d at 258 (fifth *Holley* factor weighed against termination where DFPS presented no evidence father would require assistance if child were to live with him). Further, the record shows that F.C. had completed all the requirements of his FSP, with the exception of the family-therapy requirement. *See In re M.W.H.*, 2012 WL 6808510, at *9 ("Mother's and Father's substantial compliance with the [FSP] shows a deep commitment to the goal of reunification, as opposed to parents who are non-compliant with their [FSPs] and termination is warranted."); *In re W.C.*, 98 S.W.3d at 766 (holding evidence insufficient to support trial court's best-interest finding where parent did "everything [DFPS] required of her"). And F.C. and the children were actively attending and participating in family-therapy sessions at the time of trial. *Cf. In re B.J.*, No. 01-15-00886-CV, 2016 WL 1389054, at *12 (Tex. App.—Houston [1st Dist.] Apr. 7, 2016, no pet.) (mem. op.) (noting mother did not complete FSP requirements when considering programs available to assist mother); *In re Z.B.*, No. 02-14-00175-CV, 2014 WL 5409103, at *9 (Tex. App.—Fort Worth Oct. 23, 2014, no pet.) (mem. op.) (finding mother's decision not to take advantage of DFPS services offered to her weighed in favor of termination being in child's best interest).

In regard to the plans for the children, Ramirez testified that the children's current placement is not "a long term placement" and she would like to find another placement for the children. Notably though, Ramirez provided no details regarding with whom or where that other placement might be or if a new placement for the children was even possible. *See In re E.N.C.*, 384 S.W.3d at 808 (DFPS's only plan for children was "to leave [them] together with the same foster parents until they age out" and no evidence children's foster parents could provide for them in ways father could not); *In re Z.B.*, 2016 WL 3922936, at *6 (trial court's best-interest finding not supported by clear and convincing evidence where counselor testified children needed permanent, stable home and could be adopted, but was unaware of any potential adoptive parents); *In re J.A.S., Jr.*, 2013 WL 782692, at *10 (sixth *Holley* factor either neutral or weighed against termination of parental rights where DFPS's apparent plan was to leave child with same foster parents). In contrast, F.C. wants to care for the children with whom he has bonded and visits

---

14. The majority faults F.C. for not immediately completing the requirements of his FSP. However, the moment that F.C. completed his FSP seems irrelevant, especially considering that it is undisputed that he did complete his FSP, with the exception of the family-therapy requirement, by the time of trial.

regularly. *See In re J.N.*, 301 S.W.3d at 435 ("While [DFPS] need not prove definitive plans for the child's placement, . . . [there is] no compelling benefit that would be gained by severing the bond that exists between [the parent] and child at this time."); *In re W.C.*, 98 S.W.3d at 766 ("[T]he best interest standard does not permit termination merely because a child might be better off living elsewhere.").

In regard to the stability of the proposed placement, the majority characterizes the children's current placement as "safe" and "drug-free," and notes that "the children attend school." Notably though, Ramirez testified that the children's placement is not "a long term placement" and she would like to find another placement for the children. Further, while the children's placement may be "safe" and "drug-free," DFPS did not present evidence that the home the children would share with F.C. would be unsafe or not "drug-free." And there is no evidence that the children would not attend school if they were to be returned to R.C. *See In re E.N.C.*, 384 S.W.3d at 808 ("A lack of evidence does not constitute clear and convincing evidence."); *In re W.C.*, 98 S.W.3d at 766 ("[T]he best interest standard does not permit termination merely because a child might be better off living elsewhere."). Further, it is undisputed in this case that F.C. completed all the requirements of his FSP, with the exception of the family-therapy requirement, and one of those requirements mandated that F.C. "create and maintain housing that is sanitary, safe, and free of hazards" for the children.

In regard to acts or omissions of F.C. that may indicate that the parent-child relationship is not proper, there is no evidence that F.C. has an unstable lifestyle, is an avid narcotics user, cannot provide a stable home for the children, is facing the potential of incarceration, or has wholly failed to comply with his FSP. *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (listing considerations under "acts or omissions" prong of *Holley* factors); *see also In re K.R.G.*, No. 01-16-00537-CV, 2016 WL 7368082, at *12 (Tex. App.—Houston [1st Dist.] Dec. 15, 2016, no pet.) (mem. op.) (same). Instead, here, the evidence shows that F.C. has complied almost entirely with his FSP, participated in individual therapy and family therapy, consistently attended visits with the children, and "create[d] and maintain[ed] housing that is sanitary, safe, and free of hazards" for the children. *Cf. In re J.D.*, 436 S.W.3d 105, 121 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (mother convicted of narcotics possession, "jailed on more than one occasion," failed to maintain stable housing, and child was victim of physical abuse while in mother's sole care); *In re S.B.*, 207 S.W.3d at 887–88 (father potentially facing "long-term incarceration," was an extensive narcotics user, had not completed any tasks on his FSP, and never attempted to contact children).

Finally, it is important to reemphasize that "[t]ermination of parental rights requires proof by clear and convincing evidence. [And] [t]his heightened standard of review is mandated not only by the [Texas] Family Code . . ., but also the Due Process Clause of the United States Constitution."[15] *In re E.N.C.*, 384 S.W.3d at 802;

---

**15.** Again, it must be noted that the majority places great emphasis on what F.C. *did not* testify about, and in doing so, improperly implies that F.C. had the burden to prove that his parental rights *should not* be terminated. *See In re E.N.C.*, 384 S.W.3d at 808 ("A lack

of evidence does not constitute clear and convincing evidence."); *In re K.A.S.*, 399 S.W.3d at 263 ("To terminate parental rights pursuant to section 161.001 of the Family Code, *the Department has the burden to prove* one of the predicate grounds in subsection [(b)](1) and

*see also In re J.F.C.*, 96 S.W.3d at 263–64. "[P]arental-rights termination impacts not only the fundamental liberty interests of the parent, but also the fundamental liberty interests of the child[ren] on whose behalf the State's action is initiated." *In re K.D.*, 471 S.W.3d 147, 167 (Tex. App.— Texarkana 2015, no pet.). "[U]ntil the State proves parental unfitness, the child[ren] and [their] parents share a vital interest in preventing erroneous termination of their natural relationship." *Santosky*, 455 U.S. at 760, 102 S.Ct. at 1398. Simply put, while it is possible in this case that ultimately it is in the children's best interest for F.C.'s parental rights to be terminated, DFPS *must* "meet its burden of proof," and here, "the evidence introduced at trial fails ... to support" the trial court's best-interest finding. *In re E.N.C.*, 384 S.W.3d at 809–10 ("[DFPS] is required to support its allegations against a parent by clear and convincing evidence; conjecture is not enough."); *see also In re R.N.G.*, No. 11-02-00084-CV, 2002 WL 32344622, at *5 (Tex. App.—Eastland Dec. 12, 2002, no pet.) (not designated for publication) ("[T]ermination of the parent-child relationship can only be justified by the most solid and substantial reasons.").

It also must be noted that, at times during trial, DFPS stated that its goal was reunification of the children with F.C., not termination of F.C.'s parental rights. And at one point Child Advocates did agree with this goal. *See In re M.W.H.*, 2012 WL 6808510, at *9. Further, the children's own ad litem expressed concern to the trial court that there was not "sufficient evidence to justify termination at this point."

Viewing the evidence in the light most favorable to the trial court's finding, the trial court could not have formed a firm belief or conviction that termination of F.C.'s parental rights is in the best interest of the children. *See* Tex. Fam. Code Ann. § 161.001(b)(2). Accordingly, I would hold that the evidence is legally insufficient to support the trial court's finding that termination of F.C.'s parental rights is in the best interest of the children, sustain F.C.'s third issue in part, reverse the judgment of the trial court, and render judgment in favor of F.C. *See id.*; *In re J.F.C.*, 96 S.W.3d at 266 ("Rendition of judgment in favor of the parent would generally be required if there is legally insufficient evidence."). The majority errs in holding that the evidence is legally sufficient and affirming the trial court's judgment.

Further, to the extent that the majority holds that the evidence is factually sufficient to support the trial court's finding that termination of F.C.'s parental rights is in the best interest of the children, it fails to conduct a proper factual-sufficiency review of the evidence. The majority does not properly consider all of the evidence in a neutral light, including that which does not support the trial court's finding. *See In re J.F.C.*, 96 S.W.3d at 266 (distinction in how evidence reviewed when appellate court is considering legal versus factual sufficiency of evidence); *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 29 (Tex. 1993) (court of appeals must apply correct legal standard in its review of evidence); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (courts of appeals commit reversible error in applying legal-sufficiency standard of review to answer questions of fact).

that termination is in the best interest of the child." (emphasis added)).