**Opinion issued December 5, 2017**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-17-00491-CV

———————————

## IN THE INTEREST OF J.S.-A A/K/A J.S., AND J.B.S., JR., CHILDREN

———————————

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-03173J**

———————————

### MEMORANDUM OPINION

The mother and father of two young children appeal from the trial court's order terminating their parental rights. In her appeal, the mother challenges the legal and factual sufficiency of the evidence supporting the finding that termination of her parental rights is in the children's best interest. *See* TEX. FAM. CODE § 161.001(b)(2). The father's appeal challenges the legal and factual sufficiency of

the evidence supporting the predicate grounds that the trial court found to support termination as well as the appointment of the Department of Family and Protective Services as sole managing conservator of the children. *See id.* §§ 161.001(b)(1)(E), (O), 161.207, 161.208. We affirm.

## Background

*History leading to the Department's managing conservatorship*

The mother's history with the Department began when she was a child. Because of her father's his illegal drug use, the Department removed the mother and her brother from the father's custody and placed them in the foster care system. The mother has given birth to five children. One is deceased and the two eldest, who are not the subject of these proceedings, live with their father in San Antonio.

In June 2010, when the mother's eldest child was about seven months old, the Department received a referral alleging that the mother and the child's father engaged in domestic violence, including an incident in which one parent threw a dresser drawer that landed on the child. The parents were living in the San Antonio area but did not have a stable home at the time. The Department took temporary managing conservatorship of the child and referred the mother to participate in Family-Based Safety Services (FBSS), but the mother did not cooperate and would not complete the services. Over the Department's objection, the San Antonio court presiding over the case ordered family reunification.

The mother separated from the older children's father and began a relationship with J.B.S., Sr., the father in this case, sometime before the end of 2013. She gave birth to Joann in July 2014 and John in June 2015.[1]

By early 2016, the mother was pregnant and had the four children living with her in her father's home. The children's maternal grandfather assisted the mother in caring for the children; it does not appear that the father was involved with the mother and children at that time. The mother's brother, who had aged out of foster care, also was living in the home. The mother left the children in his care while she and the grandfather were at work.

In late January 2016, the Department received a referral alleging neglectful supervision, physical abuse, and physical neglect of the four children by the mother and the grandfather. According to the referral, the mother left the children in a vehicle unattended for five to ten minutes, then the grandfather left the children unattended in a dental office waiting room for about ten minutes. The mother and grandfather were observed striking the children on their heads and other body areas. The two eldest wore dirty clothing and smelled like urine. One of the children stated that his mother hits him in the head and pushes him to the floor.

Another referral in March 2016 alleged that the mother's brother had sexually abused the children while the mother had left them in his care. It was reported that

---

[1] These are pseudonyms. *See* TEX. R. APP. P. 9.8.

3

the brother also sexually assaulted Joann and John. The Department found the children's outcries to be credible. By the time the Department received the report, the mother's brother had left the home and could not be found.

In mid-March 2016, while seven months' pregnant, the mother's vehicle was rear-ended in a collision. The mother did not seek immediate medical care. She prematurely went into labor the following day and gave birth to Paul.[2] Around this time, the father of the two eldest children learned of their sexual abuse by the mother's brother. One of the children also told him that their grandfather smoked crack cocaine in front of them. The father immediately picked his children up and brought them to live with him in his home.

Paul remained in the hospital for approximately two months, until he weighed six pounds. Paul died the day after he was discharged from the hospital, in mid-May. That morning, the mother and father, who apparently had resumed their relationship, picked up the grandfather and brought him to their home to watch Paul, Joann, and John while they were at work. The grandfather drove with the children to the mother's workplace to pick her up when her shift ended at 1:00 P.M. The mother, however, was unable to leave work until two hours later. While the grandfather and the children waited in the car during that time, Joann soiled her diaper, so after the mother left work, they stopped at a discount store to purchase

---

[2] This also is a pseudonym.

items to clean her and change her diaper. When the mother returned to the car, she bumped into Paul's carseat and noticed that he did not respond, his color was not right, and something was coming out of his mouth. EMS was contacted and responded immediately, but the efforts to revive Paul were unsuccessful.

The Department was notified of Paul's death through a referral alleging neglectful supervision. Its investigation into these circumstances did not reach a definitive conclusion as to the cause of Paul's death. Concerned with the welfare of the two surviving children in light of the mother's lack of stable housing and her failure to cooperate with the Department's previous efforts to provide services, however, it continued investigating the family's living conditions.

A Bexar County investigator for the Department spent two days trying to locate the mother. When the investigator found the mother, she set up an appointment for the family to visit her in the Department's San Antonio office.

The mother was staying at her cousin's house and refused to allow the investigator to visit the home. The mother resisted efforts to establish a safety plan for the children and hung up on the investigator. She took the children to Dallas after being warned not to leave town.

Eventually, the mother orally agreed to bring the children to a maternal aunt's home in Dallas and allow the aunt, who had fostered children in the past, to supervise the children. The Department approved the aunt as a monitor. The day after they

5

moved in with the aunt, however, the father and mother took the children from the home, over the aunt's protest. In speaking with the investigator about that development, the aunt told her that the mother and father "did not want to have any rules."

Next, the mother's cousin contacted the Department. She told the worker that the mother had asked her if she could care for her children for a while, but the mother and children never arrived. After repeated efforts to contact the family, the investigator finally reached the father by phone. The father said that the family was staying with one of his cousins in Houston. The worker again explained the safety plan. The mother told the investigator that she did not see the need for a safety plan and did not agree to it. She and the father nevertheless agreed to let the caseworker see the room in the cousin's house where they were staying.

The parents had no beds for the children, and further inquiry revealed that the father's cousin had a criminal record, making the placement unsuitable. The caseworker found another relative placement, but shortly after the children were placed there, that relative told CPS that the parents were not helping to support the children with beds, food, diapers, clothing, and money as they had promised, and they did not seem to take their responsibilities to their children seriously. As a result, the relative told the caseworker that she could not care for the children.

The investigator told the mother that a monitor was no longer an option because they had violated the earlier agreement allowing the Dallas aunt to serve as monitor. The Department took the children into custody and brought this suit. The trial court appointed the Department to serve as temporary managing conservator of the children.

*Temporary managing conservatorship*

In June 2016, the Department prepared family plans of service for both the mother and the father, which the trial court incorporated into an order. Under the plans, the mother and father each were required to:

- Complete a drug and alcohol assessment and follow all recommendations;
- Participate in an approved parenting course;
- Undergo psychological evaluation and follow all recommendations;
- Begin treatment for domestic violence;
- Obtain and maintain stable housing for a period of at least six months, providing a copy of a leasing agreement;
- Provide paystubs showing stable income or employment for a period of at least six months;
- Attend all court hearings; and
- Submit to random drug testing twice monthly.

In October 2016, an incident of domestic violence occurred between the mother and the father. During the altercation, the father beat the mother and hit her head on the floor, causing a subdural hemorrhage. As a result, the mother spent two days in the hospital and the father was arrested and taken to jail. The father, who

had begun his battering intervention program before the fight, missed two classes while he was detained. Criminal charges were filed against the father but were later dismissed based on mutual combat. By the time of trial, the parents were no longer living together.

Each parent tested positive for illegal drugs while the service plan was in effect. The mother tested positive twice, once in June 2016 for cocaine and again in October 2016 for codeine. The father tested positive on nine occasions for a variety of illegal drugs, including cocaine, amphetamine, methamphetamine, marijuana, and codeine. After a brief period of apparent sobriety, he relapsed, testing positive for illegal drugs at least once monthly in the six consecutive months before trial. Despite the numerous positive testing results and the father's prior admissions to drug use during the Department's investigation, the father testified at trial that he never used cocaine or methamphetamine. He blamed the positive results on testing errors and inadvertent contact with drugs present at the home where he was staying.

The mother failed to submit to the required psychological evaluation and did not attend counseling. She was traveling back and forth between Houston and San Antonio. She claimed to live in San Antonio and had a "welcome" flyer from an apartment complex there, but she did not present a lease agreement as required by the family service plan.

During this period, Joann and John were living with a foster family. John had some developmental delays and was receiving occupational, physical, and speech therapy. Joann had no special needs, but she had significant dental problems and required crowns to prevent her baby teeth from falling out prematurely. CR 127.

The foster parents were providing a safe and stable home for the children and meeting all of their emotional and physical needs. John was doing well with his physical therapy. The foster parents were working with him to help improve his motor skills and to teach him to be more independent. Joann enjoyed helping her brother too.

The foster parents initially accepted the children with the intention of adopting them, but had since decided not to adopt them. Since then, the caseworker testified, a "very promising," possible adoptive family had been located and a home study completed.

**Termination of Parental Rights**

**I.    Applicable law and standards of review for evidentiary sufficiency challenges to the termination of parental rights**

A parent's rights to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *accord In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). We therefore strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in

favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Parental rights, however, are not absolute and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). Recognizing that a parent may forfeit his or her parental rights by their acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *Id.*

In a case to terminate parental rights by the Department under § 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and, (2) termination is in the best interest of the child. TEX. FAM. CODE § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007; *see In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *A.V.*, 113 S.W.3d at 362 (footnote omitted).

In reviewing the legal sufficiency of the evidence supporting a decision to terminate parental rights, the appellate court looks at all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could

have formed a firm belief or conviction that its finding was true. *J.F.C.*, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, disregarding all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after reviewing the record, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

In reviewing the factual sufficiency of the evidence supporting a decision to terminate parental rights, we determine whether, considering the entire record, including evidence both supporting and contradicting the finding, a factfinder reasonably could have formed a firm conviction or belief about the truth of the matter on which the Department bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266–67. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266, *quoted in In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

11

## II.    Father's appeal

The father contends that the evidence is legally and factually insufficient to support the trial court's predicate findings for termination of his parental rights under section 161.001(b)(1)(E) and (O) as well as its finding that termination of his parental rights is in the children's best interest. He also challenges the legal and factual sufficiency of the trial court's finding that the Department's continued conservatorship is in the children's best interest.

### A.    Challenge to predicate findings for termination

#### 1.    Applicable law

Subsection (E) allows termination when the parent has endangered the child. Specifically, it provides that the court may order termination upon a finding, by clear and convincing evidence, that a parent:

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]

TEX. FAM. CODE § 161.001(b)(1)(E).

"'To endanger' means to expose a child to loss or injury or to jeopardize a child's emotional or physical health." *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. 2010) (citing *Robinson v. Tex. Dep't of Protective & Regulatory Servs.*, 89 S.W.3d 679, 686 (Tex. App.—Houston [1st Dist.] 2001, no pet.)); *see In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Under subsection (E), the relevant inquiry is whether

12

evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See In re J.T.G.*, 121 S.W.3d 117, 125 Tex. App.—Fort Worth 2003, no pet.); *see also* TEX. FAM. CODE § 161.001(b)(1)(E). Additionally, termination under subsection (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *J.T.G.*, 121 S.W.3d at 125 (citing TEX. FAM. CODE § 161.001(b)(1)(E)). It is not necessary to establish that the parent intended to endanger the child, that the parent's conduct be directed at the child, or that the child actually suffer injury. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996); *Tex. Dep't Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *J.T.G.*, 121 S.W.3d at 125. The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533; *In re K.P.*, 498 S.W.3d 157, 171 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

### 2. Analysis

The evidence of father's frequent use of illegal drugs during the pendency of this case is legally sufficient, standing alone, to support the trial court's endangerment finding. "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Illegal drug use may support termination under section 161.001(b)(1)(E) because "it exposes the child to the possibility that the

parent may be impaired or imprisoned." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (en banc). Because it significantly harms the parenting relationship, drug activity can constitute endangerment even if it transpires outside the child's presence. *See J.O.A.*, 283 S.W.3d at 345; *Walker*, 312 S.W.3d at 617. "[A] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *In re C.J.L.*, No. 01-17-00283-CV, 2017 WL 4366010, at *7 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (mem. op.).

The father also admitted to his history of domestic violence with the mother, which further supports the endangerment finding. *See In re S.C.F.*, 522 S.W.3d 693, 703 (Tex. App.—Houston [1st Dist.] 2017, pet denied) (evidence of parent's drug use and history of domestic violence supported finding that placement would put children in emotional danger) (citing *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.)).

The father mainly left the children in their mother's care. The evidence shows that the mother subjected the children to physical abuse, neglected them, and left them with her father and brother, who also abused and neglected them. Because the

14

family lived together at times, the trial court could reasonably infer that the father knew how the mother treated the children. This evidence is legally and factually sufficient to support a finding that the father knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being.

In considering the disputed evidence in our factual-sufficiency review, the record shows that the father denied any history of illegal drug use at trial and suggested that the drug testing facility provided inaccurate results. At the same time, evidence before the trial court shows that the father admitted to illegal drug use during the course of the Department's investigation and admits in his appellate brief that his continued illegal drug use is a factor that weighs in favor of the best interest termination finding. Considering the evidence both supporting and contradicting this issue, the trial court reasonably could have formed a firm conviction or belief that the father's illegal drug use endangered his children's emotional well-being. *See C.H.*, 89 S.W.3d at 25.

A finding of one predicate factor, coupled with a finding that termination is in the children's best interest, is sufficient to support termination. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."); *see also Latham v. Dep't*

*of Family & Protective Servs.*, 177 S.W.3d 341, 348 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("A court may base a termination of parental rights upon a finding that a parent engaged in conduct described in one of the alleged grounds, plus a finding that termination is in the best interest of the children."). Having held that the evidence is legally and factually sufficient to support the trial court's finding of endangerment under subsection (E), we need not address the father's challenge to the trial court's predicate finding for termination under subsection (O).

## B. Department's appointment as managing conservator

The father, although not challenging the finding that his illegal drug use makes termination of his parental rights in the children's best interest, contends that the trial court's appointment of the Department as managing conservator is not in the children's best interest. Conservatorship determinations made after a bench trial are "subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). To determine whether a trial court abused its discretion, the appellate court must decide whether the court acted without reference to any guiding rules or principles, that is, whether its decision was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)). "An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence," nor does an abuse of discretion occur so long as

there is some evidence of substantive and probative character to support the trial court's decision. *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.) (first citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding); and then citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002)).

The Department's appointment in this case is based on the authority of section 161.207 of the Family Code, which provides, in pertinent part:

> APPOINTMENT OF MANAGING CONSERVATOR ON TERMINATION. (a) If the court terminates the parent-child relationship with respect to both parents . . ., the court shall appoint a suitable, competent adult, the Department of Family and Protective Service, or a licensed child placing agency as managing conservator of the child. . . .

The statute further provides that "the court that terminates a parent-child relationship may not appoint the Department of Family and Protective Services as permanent managing conservator of the child unless the court determines that . . . a relative located by the department has had a reasonable opportunity to request appointment as managing conservator of the child . . . . " TEX. FAM. CODE § 161.208.

The father first questions the diligence of the Department in locating a kinship appointment for the children. Specifically, he criticizes the Department's failure to consider placing the children with their half-siblings in San Antonio. The record, however, shows that the half-siblings' father, who is not a blood relation to the

children, is a registered sex offender and thus, the home does not qualify as a suitable placement for the children.

The father relies on *Horvatich v. Department of Protective and Regulatory Services*, 78 S.W.3d 594 (Tex. App.—Austin 2002, no pet.), in urging this Court to reverse and remand the case for a new trial on the issue of conservatorship. In *Horvatich*, the appellate court held that the evidence was insufficient to sustain the termination of a mother's parental rights, noting that the Department did not adduce trial testimony from anyone with personal knowledge relating to the children or any other evidence as to how the children were doing in foster care, whether they were being considered for adoption, the likelihood of their adoption, the Department's plan for their placement, and whether the Department would attempt to place the siblings together. *Id.* at 601–02.

*Horvatich* is inapposite. The record in this case shows that the Department has been diligent throughout the case in trying to locate a kinship placement for the children. A few were found, but no qualified relative was able or willing to care for the children on a long-term or permanent basis. At trial, the caseworker testified that the children were in a licensed foster placement where they were able to live in a stable and caring home environment through the pendency of the case. The caseworker further testified that Department has tentatively identified a permanent adoptive placement for the children, and she expressed confidence that the

Department would not have any trouble in finding an adoptive placement for the children. The lack of a definitive plan for the children's permanent placement does not preclude the trial court from appointing the Department as managing conservatorship. *Cf. In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013) (holding that lack of definite plans for child's permanent placement did not bar conclusion that termination of parental rights was in child's best interest).

The father also suggests that the trial court could have placed the children with the mother while looking for an adoptive home. But the mother's responsibility for the children's neglect and abuse, discussed below, shows that her appointment as managing or possessory conservator would not be in the children's best interest. *See* TEX. FAM. CODE §§ 153.004(b), 153.131(a).

## III. Mother's appeal

The mother challenges the trial court's predicate finding for termination of the mother's parental rights under section 161.001(b)(1)(E) and its finding that termination is in the children's best interest.

The trial court found that the mother's parental rights could be terminated under section 161.001(b)(1)(E) and (O), and that termination was in the children's best interest. The mother concedes that the evidence is legally and factually sufficient to support the predicate finding that she failed to comply with the family service plan. TEX. FAM. CODE § 161.001(b)(1)(O). When one predicate finding for

19

termination is conceded to be adequate, the reviewing court need not consider the remaining grounds for termination. *See In re A.V.*, 113 S.W.3d at 362. The mother nevertheless challenges the legal and factual sufficiency of the evidence supporting the trial court's subsection (E) finding because of its negative collateral consequences, including its binding effect on the best-interest determination. She directs us to the Fourteenth Court of Appeals' decisions reviewing subsection (E) findings for this reason. *See In re S.G.F.*, No. 14-16-00716-CV, 2017 WL 924541, at *4 (Tex. App.—Houston [14th Dist.] Mar. 7, 2017, no pet.); *In re J.J.G.*, No. 14-15-00094-CV, 2015 WL 3524371, at *4 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Because the evidence supporting the trial court's endangerment findings is integral to its best-interest determination, we agree with our sister court's approach and begin by evaluating the legal and factual sufficiency of the evidence supporting the endangerment finding.

### A. The evidence is legally and factually sufficient to support the trial court's endangerment finding.

The mother has a history of domestic violence, both with the father of her two older children and with Joann and John's father. The record describes one instance in which a drawer fell on a child and another that caused the mother to be hospitalized for two days for a brain bleed. The record notes another instance of domestic violence with the father, but does not detail the incident. Although the

20

mother may claim that her separation from the father eliminates the possibility of further domestic violence, her history with the older children's father allows for a reasonable inference that she is likely to continue to engage in domestic violence in the future.

The trial court also heard evidence that the mother and grandfather beat the children on the head as punishment. The mother denies striking her children on the head, but one of her children made an outcry that she did. The mother's failure to follow through with the psychological evaluation and individual counseling required by her family service plan further indicates an unwillingness to change her behavior in this regard. The trial court could reasonably find that the mother, as both a victim and a perpetrator of physical violence, placed the children in emotional and physical danger. *See In re S.C.F.*, 522 S.W.3d at 703.

The mother concedes that she tested positive for illegal drugs on two occasions. She correctly observes that this evidence shows she is not a frequent user. At trial, however, she categorically denied any drug use and denied knowing that the children's father used drugs. The record also shows that her father lost custody of her and her brother because of illegal drug use, and he reportedly used crack cocaine while the children were in his care. From this evidence, a reasonable factfinder could form a firm conviction or belief that the mother either knew of the father's and the grandfather's illegal drug use or was deliberately indifferent to their drug use when

21

she left the children in their care. The mother's denial that she had any knowledge of the father or grandfather's drug use does not create a dispute in the evidence so significant that the trial court could not reasonably have formed that firm belief. Although the mother testified she did not know that her brother would sexually abuse the children, she left the children with him without any apparent regard for his ability or willingness provide them with a safe environment. The trial court could infer that the mother lacked concern for the children when leaving them with the grandfather, who had his own children taken from him by the Department.

Other evidence also supports a finding that the mother consciously disregarded the children's safety and well-being. The record shows that the mother at times was "couch-surfing" with the children and that the family showed up at relatives' homes to seek shelter from time to time. As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *See In re J.O.A.*, 283 S.W.3d at 345 & n.4.

The mother reportedly left the children, who were then one and two years old, unsupervised on two occasions; once in the car and once in a dentist office, for five to ten minutes at a time. The mother also failed to live up to her promise to provide food, clothing, and money to the relative who tried to care for the children. As a result of the parents' failure to provide this basic support, the Department was required to take the children into custody. We hold that the evidence is legally and

factually sufficient to prove that the mother's conscious course of conduct endangered the children's physical and emotional well-being.

## B. Termination of the mother's parental rights is in the children's best interest.

### 1. Applicable law

As a matter of public policy, "the best interest of a child is usually served by maintaining the parent-child relationship." *J.F.C.*, 96 S.W.3d at 294. Despite this important relationship, the Texas Supreme Court has held that "protection of the child is paramount" and "the rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *A.V.*, 113 S.W.3d at 361 (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994). Appellate courts examine the entire record to decide what is in the best interest of the child. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that the best interest of a child is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). At the same time, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE § 263.307(a).

In assessing whether termination is in a child's best interest, the courts are guided by the non-exclusive list of factors set forth in *Holley v. Adams*. *See* 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the

emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and (9) any excuse for the acts or omissions of the parent. *Id.* The statute also provides a list of relevant considerations. TEX. FAM. CODE § 263.307. These include:

> (1) the child's age and physical and mental vulnerabilities;
> (2) the frequency and nature of out-of-home placements;
> (3) the magnitude, frequency, and circumstances of the harm to the child;
> (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;
> (5) whether the child is fearful of living in or returning to the child's home;
> (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
> (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
> (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;
> (9) whether the perpetrator of the harm to the child is identified;
> (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
> (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

24

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

*Id.* The Department "need not prove all of the factors as a condition precedent to parental termination, 'particularly if the evidence was undisputed that the parental relationship endangered the safety of the child.'" *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting *C.H.*, 89 S.W.3d at 27).

### 2. Analysis

*Emotional and physical needs of the children*

At ages two and three, the children were too young to express their desires, and so this factor is neutral. The children have been well cared for at their foster home, receiving the physical and emotional support they need. John is receiving services for his special needs. Because of John's developmental delays, he will require specialized services and care into the future. The mother's general lack of attentiveness to the children's needs indicates that she would have difficulty providing John the extra care he needs. This factor weighs in favor of termination.

25

*Parental abilities of the individuals seeking custody and stability of the proposed placement*

The children have had a stable placement while in the Department's conservatorship, and the Department represented that it intended to move the children to a permanent adoptive home as soon as possible. The Department had tentatively identified potential adoptive parents who were both educators and had completed a home study. These factors also weigh in favor of termination.

*The acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper, and any excuse for those acts or omissions*

When the children were in the mother's care, they were subjected to sexual abuse, physical abuse, and neglect, as well as emotional abuse resulting from exposure to family violence and caregivers under the influence of illegal drugs. This history, the mother's resistance to the Department's offer to provide services while she was in San Antonio, and her failure to complete the required services indicate that she is not likely to provide better care in the future.

The evidence supporting the endangerment finding against the mother shows that she has not been able to provide the children with a safe, stable home and that through her own treatment of the children and her indifference toward them, the children have been subjected to physical and emotional harm. The mother claimed not to have been aware of the father's or grandfather's drug use or that her brother was a sexual predator, but she did not provide an explanation as to why she

26

considered these individuals appropriate to care for the children. These factors weigh in favor of termination.

Accordingly, we hold that legally and factually sufficient evidence supports the trial court's finding that termination of the mother's parental rights is in the children's best interest.

## CONCLUSION

We affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Higley and Bland.