

**IN THE**
**TENTH COURT OF APPEALS**

─────────────

**No. 10-18-00339-CV**

**IN THE INTEREST OF W.D AND C.D., CHILDREN**

─────────────

**From the County Court at Law**
**Ellis County, Texas**
**Trial Court No. 95441CCL**

─────────────

**MEMORANDUM OPINION**

─────────────

Linda D. and William D. appeal from a judgment that terminated their parental rights to their children, W.D. and C.D.  *See* TEX. FAM. CODE ANN. § 161.001 (West 2014). Linda and William complain that the evidence was legally and factually insufficient for the trial court to have found the four predicate acts upon which the termination was based to be true and that termination was in the best interest of the children.[1]  Because we find that the evidence was legally and factually sufficient as to Section 161.001(b)(1)(E) and termination was in the best interest of the children, we affirm the judgment of the

───────────────

[1] Linda and William have filed separate briefs in this appeal; however, their issues are substantially the same and will be addressed together in this opinion.

trial court.

## STANDARD OF REVIEW

The standards of review for legal and factual sufficiency in termination cases are well established. *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the finding to determine whether a trier of fact could reasonably have formed a firm belief or conviction about the truth of the Department's allegations. *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005); *J.F.C.*, 96 S.W.3d at 265-66. We do not, however, disregard undisputed evidence that does not support the finding. *J.F.C.*, 96 S.W.3d at 266. In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d at 25. We must consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *Id*. If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

We give due deference to the factfinder's findings, and we do not substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109.

**FAMILY CODE SUBSECTION 161.001(b)(1)(E)**

Linda and William each challenge the legal and factual sufficiency of the evidence to support the trial court's findings regarding the predicate acts listed in Family Code subsection 161.001(b)(1)(E). TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (West 2014). Subsection (E) permits termination when clear and convincing evidence shows that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (West 2014). Within the context of subsection (E), endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Instead, "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *Id.*; *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996).

It is not necessary to establish that a parent intended to endanger a child in order to support termination of the parent-child relationship under subsection (E). *See In re M.C.*, 917 S.W.2d at 270. The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533.

"Endangerment can occur through both acts and omissions." *Phillips v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 348, 354 (Tex. App.—Austin 2000, no pet.). The statute does not require that conduct be directed at a child or cause actual harm; rather,

it is sufficient if the parent's conduct endangers the well-being of the child. *See Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize a child's present or future physical or emotional well-being. *See In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).

As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Here, the evidence of parental drug use and domestic violence support the endangerment findings. *See In re S.C.F.*, 522 S.W.3d 693, 703 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (holding evidence of mother's drug use and history of domestic violence supported finding that placement would put children in emotional danger).

A parent's use of illegal drugs, and its effect on his or her ability to parent, may qualify as endangering conduct. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Illegal drug use may support termination under subsection (E) because it exposes the child to the possibility that the parent may be impaired or imprisoned. *Walker*, 312 S.W.3d at 617-18 (upholding termination of parental rights despite there being no direct evidence of parent's continued drug use actually injuring child). And a mother's use of narcotics during pregnancy may constitute conduct that endangers the physical and emotional

well-being of a child. *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Additionally, evidence of a child's exposure to domestic violence is supportive of an endangerment finding. *In re J.J.S.*, 272 S.W.3d 74, 79 (Tex. App.—Waco 2008, pet. denied) (upholding endangerment finding when trial court found that mother "conducted herself in a manner, namely her abusive relationships, which exposed her children to a home where physical violence was present"). Domestic violence may constitute endangerment, even if the violence is not directed at the child. *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied).

The children were removed after an outcry by an older child, C.P., residing in the home who claimed that she was afraid to go home because Linda and William had gotten into a fight and William threw a wallet at Linda which hit C.D. C.P. also claimed that William had hit her in the face and that there was extensive marijuana use by Linda and William in the home. When the Department's investigator went to the residence to investigate, she smelled marijuana strongly emitting from the residence. Linda denied using marijuana and claimed that C.P. was using marijuana at that time.

Two weeks later, law enforcement was called to the home for a domestic disturbance. The officers smelled a "very strong" odor of marijuana. Linda stated that William was not at home, but he came from another room when she began screaming for him because the officers were going to get a search warrant for the residence. Both Linda

and William struggled with law enforcement and the children were present and observed the entire incident. Marijuana and drug paraphernalia were found in the residence where the children could have easily had access. The children and William all tested positive for marijuana. Both Linda and William pled guilty to possession of marijuana and William was also convicted of resisting arrest from this incident.

During the pendency of this case, Linda and William failed or refused to take multiple drug tests, and when tested, tested positive for amphetamine, methamphetamine, and marijuana. Linda admitted that she had used marijuana and cocaine during at least two of her pregnancies and that she had also used cocaine and MDMA after the children were removed by the Department. After the removal of the children, on one occasion law enforcement discovered methamphetamine, miscellaneous pills, marijuana, a digital scale, and other items commonly associated with the distribution of drugs in the residence where they were staying with another individual. Both Linda and William were arrested and charged with possession and delivery of controlled substances after this incident. The individual with whom they were residing also participated with them in the distribution of drugs. Linda and William were accused of assaulting this individual with whom they were residing.

Neither parent completed the tasks on their service plan to address the reasons for removal. Their attendance at scheduled appointments was poor and they were each discharged from multiple providers for failure to attend appointments. Neither parent

completed counseling or provided proof of having completed drug treatment. Both parents blamed the Department for the removal of the children and neither accepted any responsibility for their actions.

The children exhibited signs of having witnessed domestic violence in the home. Their therapist testified that the children told her that there was a lot of yelling in the home. W.D. understood that part of the reason for his removal was because his parents hit each other. The therapist believed that C.D. has seen a lot of violence.

Given the record, we conclude that the evidence of both parents' drug use, which resulted in the children testing positive for marijuana, and the domestic violence in the parents' home, viewed in the light most favorable to the subsection (E) finding, was sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction that Linda and William engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the subsection (E) finding or was not so significant that the factfinder could not reasonably have formed a firm belief or conviction that the elements of subsection (E) were shown. Accordingly, we hold that the evidence was legally and factually sufficient to support the subsection (E) finding in each case. We overrule each parent's issue two.

Because there is sufficient evidence of subsection (E), we need not address Linda

or William's issues one, three, or four which challenge the sufficiency of the evidence to support the trial court's predicate findings under subsections (D), (O), and (P). *See In re A.V.*, 113 S.W.3d at 362 ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.").

## BEST INTEREST OF THE CHILDREN

In each parent's fifth issue, Linda and William argue that the evidence was legally and factually insufficient for the trial court to have found that termination was in the children's best interest. In *Holley v. Adams*, the Supreme Court of Texas identified factors that courts may consider when determining the best interest of the child. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The list is not exhaustive, and a court need not have evidence on every element in order to make a valid finding as to the child's best interest. *In re C.H.*, 89 S.W.3d at 27. While no one factor is controlling, analysis of a single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child. *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The evidence supporting the predicate grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent-child relationship. *In re C.H.*, 89 S.W.3d at 28.

The trial court heard evidence indicating that Linda and William engaged in substance abuse both before this proceeding was filed and while it was pending.

Evidence of a parent's past pattern of drug use is relevant not only to the stability of the home that the parents can provide, but it is relevant to the emotional and physical needs of the children now and in the future and to the emotional and physical danger in which they could be placed now and in the future. *See Holley*, 544 S.W.2d at 371-72. A parent's drug use is a condition indicative of instability in the home environment because it exposes a child to the possibility that the parent may be impaired or imprisoned. *See In re A.M.*, 495 S.W.3d 573, 579 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

The trial court also heard evidence regarding domestic violence, which is supportive of the trial court's best-interest finding relating to the emotional and physical danger to the child now and in the future. *See Holley*, 544 S.W.2d at 371-72; *In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (stating domestic violence, even when child is not intended victim, supports finding that termination is in child's best interest).

Both parents have a history of domestic violence against each other. "Evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future." *Jordan v. Dossey*, 325 S.W.3d 700, 724 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). This is especially true as in this case, where neither parent adequately addressed their abusive behavior and continued committing violence against an individual with whom they were residing after the removal of the children. Thus, the trial court was permitted to infer that Linda and

William would continue their violent behavior in the future.

The children were five and six years old at the time of the termination trial. The children were bonded to their parents, but also seemed conflicted about living with their parents and W.D. indicated that he would like to remain in his foster home. The children exhibited sadness and would act out around the time of visits or when their parents would miss visits. The parents missed multiple visits during the proceedings. Although the children's love of their parents is a very important consideration in determining the best interest of the children, it can neither override or outweigh evidence of danger to the children nor "compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life." *In re W.S.M.*, 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.).

Both children are in a foster home together where they had been for approximately eighteen months at the time of the trial. The children were very bonded to the foster family and had indicated that they wanted to stay there. The foster family was hoping to adopt the children. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (stating that stability and permanence are important to upbringing of a child and affirming finding that termination was in child's best interest when child was thriving in foster care). The foster family was taking care of the children's needs and was willing to continue to do so in the future. The Department was also considering a relative placement in Michigan but had been unable to complete the home study prior to trial.

The evidence also showed that, although the parents contend that they substantially completed their service plan, neither Linda nor William completed their services. Neither Linda nor William completed therapy, and both parents continued their drug use and criminal behavior in express violation of their service plans. A parent's failure to complete a family service plan may be considered in assessing whether termination was in the best interest of the child. *See, e.g., In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (recognizing that finding that parent failed to complete court-ordered services can be considered in support of best-interest finding).

Linda and William argue that because they and the children are bonded and their visits went well between them and the children, termination is not in the best interest of the children. Linda and William assert that, but for the Department's intervention, the children would be safe in their care. Additionally, Linda and William argue that the children had close relationships with their relatives in other states which the termination would sever and harm the children if the termination were upheld. However, to the degree that these factors would support Linda and William's positions, when considered along with the overwhelming evidence to the contrary, these assertions are not sufficient to render the evidence regarding the best interest of the children legally or factually insufficient to support the termination of their parental rights.

After viewing all of the evidence in the light most favorable to the findings regarding the best interest of the children, we conclude that the evidence was sufficiently

clear and convincing that a reasonable factfinder could have formed a firm belief or conviction that termination of the parent-child relationship between Linda and William and the children was in the children's best interest. We also conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's findings that termination of the parent-child relationship between Linda and William and the children was in the children's best interest or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in the children's best interest. Therefore, after considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's findings that termination of the parent-child relationship between Linda and William and the children, W.D. and C.D. was in the children's best interest. We overrule Linda and William's fifth issues.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Affirmed
Opinion delivered and filed March 20, 2019
[CV06]

